14740

PLANTERS FERTILIZER & PHOSPHATE CO. v. McCREIGHT

(198 S. E., 405)

484 

 

*Mr. James E. Leppard,* for appellant, 

*Mr. Samuel Want,* for respondent, 

August 18, 1938.

The opinion of the Court was delivered by MR. G. B. GREENE, ACTING ASSOCIATE JUSTICE.

On January 5, 1937, respondent and appellant entered into an agency contract whereby respondent appointed appellant its agent for the distribution of its fertilizers, etc., on a commission basis, in Ruby, Chesterfield County, and surrounding territory. On September 14, 1937, respondent brought this action against appellant demanding the sum of

$8,362.05 as the balance due it by appellant for fertilizers, etc., furnished him under the terms of the agency contract, which was annexed to and made a part of the complaint. Among the pertinent provisions of the contract are, stated in substance, the following:

(a) The goods of the respondent were to be delivered to appellant without passing title to same for sale by the latter for cash only, except where credits were authorized in writing by respondent;

(b) Where credits were authorized by respondent the appellant unconditionally guaranteed the same;

(c) All monies and securities received by appellant in connection with his handling of respondent's goods were to be held by him in trust for respondent and immediately turned over to the latter;

(d) Recourse on the part of respondent against appellant was not to be conditioned on the exhaustion of any securities received from appellant or from appellant's customers.

Respondent's statement of its account with appellant was also annexed to the complaint and showed that it had delivered to him under said contract goods to the extent of $14,687.41, on which there was still due the balance for which judgment was demanded.

Appellant in his answer set up four defenses, but we are concerned with the third defense alone. In his third defense appellant alleged that the correct total amount of his account was approximately $13,000.00; that he had made cash payments and was entitled to certain other credits, which in the aggregate amounted to more than $16,000.00, and that as a result of said payments and other credits he had overpaid his account with respondent approximately $3,000.00. Among the credits which appellant alleged that he was entitled to are the following: "certain customers' notes in the amount of $4,404.13 which the plaintiff accepted, agreed to credit on the account of defendant, and release him from secondary liability thereon; certain customers' accounts in

the amount of $2,343.89 which plaintiff accepted, agreed to credit on the account of defendant, and to release him from secondary liability thereon; * * * and the sum of $2,-500.00 paid by defendant to plaintiff by his said promissory note and chattel mortgage which the plaintiff accepted and agreed to credit on the said account of the defendant. * * *"

Respondent served notice that it would move before Honorable E. C. Dennis, Circuit Judge, for an order striking out certain allegations of the answer on the ground that they were "sham, frivolous and/or irrelevant", and for a further order for the examination of appellant before trial, said motion to be made upon the pleadings, exhibits and affidavits. At the hearing before Judge Dennis respondent produced a number of affidavits, among them being three made by T. G. Covington, respondent's district salesman, and one made by W. O. Hanahan, its secretary. Covington's first affidavit and that of Hanahan stated that the original contract between the parties had never been altered or modified in any way, and that under it appellant had handled more than one hundred and fifty customers' accounts for respondent; that the note and chattel mortgage mentioned in appellant's answer had been given by him as direct obligor in accordance with the terms of the agency contract; and that appellant had admitted to them that he had misappropriated money colllected by him for respondent by using it in another business conducted by him. In his second affidavit Covington stated that on June 2, 1937, he delivered to appellant a letter written to him by respondent which contained the following:

"We have your letter of the 28th inst., relating to your account. A statement of your account in detail is enclosed herewith. From this statement you will observe that after crediting you with all cash received, and with all customers' paper provided by you, together with all allowances to which you are entitled, there is still a balance due by you amounting to $5280.00. If we understand your explanation of the

situation, this balance represents sales of our goods made by you, for which you obtained the proceeds, and which were used by you for other purposes. This result exists, even though we are accepting customers' paper in excess of the amount we agreed to receive from you, as stated in your letter.

"We cannot of course condone your violation of your consignment contract, in the manner above referred to. However, upon receipt of your confirmation of the above stated balance, and of your agreement to pay the same on or before October 15th. * * *"

Covington further stated in his affidavit that on a copy of the foregoing letter appellant signed the following admission: "I hereby agree that the balance due by me is correctly set forth in the within letter, and in the account delivered to me this date; I further agree that the facts stated in the within letter are correct; and I hereby stipulate that in consideration of the indulgence and consideration shown me, it is not to be understood that the Planters Fertilizer & Phosphate Company have waived any rights or claims of any kind, or any remedies or legal process that may be available to them as the matter now stands."

Several affidavits by customers stated that they had paid their accounts in full. These affidavits were followed by a third affidavit by Covington, stating that the payments made by those customers had not been turned over to respondent.

Counter-affidavits were made by appellant and two other persons, but only the one made by appellant is pertinent to this inquiry. In his affidavit appellant stated that he signed the admission on the foregoing letter under duress, fearing that if he did not he would be "thrown into jail." He stated further that he had not misappropriated any money belonging to respondent, but on the contrary that he had accounted for all money coming into his hands from all sources, except a small amount due him as commissions. He stated also that he had given respondent's officers free ac-

cess to all his books and records and that they were found to be in good order; and that he had given respondent full information as to his accounts and had delivered to it all securities and accounts upon the express agreement that he would be given credit for them.

As to the motion to strike, Judge Dennis, on October 22, 1937, signed an order, the pertinent part of which is:

"The motion to strike is granted with respect to the following allegation of the defendant as set forth in paragraph 1 of the third defense:

"And the sum of $2500.00 paid by defendant to plaintiff by his said promissory note and chattel mortgage which the plaintiff accepted and agreed to credit on the said account of the defendant, aggregating * * *."

On the same date the Circuit Judge signed another order, the pretinent part thereof being:

"The pleadings, exhibits, supporting papers of the plaintiff, and counter affidavits of the defendant have been fully considered by me, and counsel on both sides have been heard. After due consideration, it is

"Ordered and adjudged, That the defendant shall submit to examination before trial before a Judge of this Court on the part of the plaintiff, and that the plaintiff shall be entitled to so examine the defendant before trial, in the county of his residence, the time and place of such examination to be hereafter determined upon plaintiff's application to fix the same."

This appeal is from the two orders above mentioned. The exceptions for appeal are:

"1. The trial Judge erred in striking out the following from the first paragraph of the third defense in the answer of the defendant: 'And the sum of $2500.00 paid by defendant to plaintiff by his said promissory note and chattel mortgage, which the plaintiff accepted and agreed to credit on the said account of the defendant, aggregating * * *.'

"Specification: The said allegations so stricken from the answer of the defendant state a valid partial defense by way of payment and was, therefore, not irrelevant.

"2. The trial Judge erred in granting the order to examine the defendant before trial.

"Specification: Under the pertinent provisions of the Code, plaintiff was required to show a good and sufficient cause for an examination before trial. The plaintiff did not show any reason why the defendant should be examined before trial. The learned Judge erred in granting the said order without any sufficient grounds or cause to sustain the same."

It will be observed that the first exception without the "specification" would be too general. It would violate that part of Section 6, Rule 4 of the Rules of the Supreme Court, which provides: "Each exception must contain a concise statement of one proposition of law or fact which this Court is asked to review. * * *" In numerous cases this Court has declined to consider such exceptions. Appellant has elected to rely upon a single specification of error in respect to the stricken allegations. That specification assigns error on the part of the Circuit Judge for the reason that the allegations so stricken "state a valid partial defense by way of payment and was, therefore, not irrelevant." We might agree with appellant with respect to this specification, but that would be of no avail to him. The motion to strike was made upon the ground that said allegations were "sham, frivolous and/or irrelevant." There is a wide difference in the legal definition or meaning of these terms. We have no way of knowing whether the Circuit Judge granted the motion because he found that said allegations were sham or because he found them to be frivolous or irrelevant. In appellant's brief we find this: "The Trial Judge did not make any findings of fact or conclusions of law other than the very general conclusion that the particular portion of the third defense in the answer should be

stricken. Counsel and parties are left in the dark as to the findings of fact and conclusions of law upon which the order is predicated."

It will be seen, therefore, that, although we might agree with appellant as to his single "specification" we would not be warranted in reversing the order appealed from. The Court will sometimes relax its rules in order that a litigant may not through inadvertence suffer material loss, but such a situation cannot arise in this case. Respondent contends that the note and mortgage were given merely as security for that much of appellant's obligation under the contract. Appellant contends that they were given in part payment of said obligation and accepted as such. He admits, however, that the mortgage debt is still unpaid. Taking either view of the transaction appellant's liability growing out of his contractual relations with respondent would remain the same. His indebtedness to respondent has neither been increased nor diminished.

Was it error for the Circuit Judge to repuire appellant to submit to examination before trial? Section 676 of the Code is as follows: "The examination, instead of being had at the trial, as provided in the last section, may be had at any time before trial, at the option of the party claiming it, before a judge of the Court, on a previous notice to the party to be examined, and any other adverse party, of at least five days, unless, for good cause shown, the judge order otherwise. But the party to be examined shall not be compelled to attend in any other county than that of his residence, or where he may be served with a summons for his attendance; nor unless it be upon the order of a judge of the Court granted after four days' notice, *and upon good and sufficient cause being shown therefor.*" (Italics added.)

The requirement of this section that the examination shall be held before the Court has been modified by Act No. 734, approved March 5, 1938, by the provision that the examination in such cases shall be held before a Master or Referee on a date to be fixed in the order.

The foregoing statutory provisions cannot in anywise be considered harsh, unfair or oppressive. As stated in *Mahaffey v. Southern Railway Co.,* 175 S. C., 198, 178 S. E., 838: "Indeed, the ruling purpose behind this statute and the remedy of discovery 'is to assist and promote the administration of public justice.' * * * 'The day is no longer here when the Court room will furnish the arena for an exhibition of purely strategic moves on the legal chessboard.' And resort to such a statute by litigants before actual trial has been well commended, 'to the end that the issues may be narrowed and the time of the Court saved, as well as that expense of the trial may be reduced.' " The Circuit Judge had before him the pleadings, exhibits and the affidavits above referred to, and his decision as to whether or not good cause had been shown for such examination will not be disturbed unless it clearly appears that there was an abuse of discretion. *Johnston v. Standard Oil Company,* 155 S. C., 179, 152 S. E., 176; *Griffin v. Owens,* 171 S. C., 276, 172 S. E., 221.

We cannot say that the Circuit Judge abused or improperly exercised his discretion in ordering an examination of appellant before trial.

For the reasons above stated the two orders appealed from are hereby affirmed and the case remanded to the Circuit Court.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER, and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.